# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| In re: | Chapter 11 |
| CHICAGO NATIONAL LEAGUE BALL CLUB, LLC,[2] | Case No. 09-13496 |
| Debtor. | (Joint Administration Pending) |

## ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363 AND 365 (I) AUTHORIZING CHICAGO NATIONAL LEAGUE BALL CLUB, LLC TO (A) ENTER INTO AND PERFORM OBLIGATIONS UNDER FORMATION AGREEMENT AND ANCILLARY AGREEMENTS, (B) EFFECT PROPOSED BUSINESS COMBINATION RESPECTING CUBS-RELATED

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (2470); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

[2] The last four digits of the federal tax identification number for Chicago National League Ball Club, LLC are 0347. Chicago National League Ball Club, LLC's corporate headquarters and mailing address is 435 North Michigan Avenue, Chicago, Illinois 60611.

**ASSETS, INTERESTS IN WRIGLEY FIELD, COMCAST SPORTS NET
AND RELATED ASSETS FREE AND CLEAR OF ALL LIENS,
CLAIMS, RIGHTS, INTERESTS AND ENCUMBRANCES,
(C) ASSUME AND ASSIGN EXECUTORY CONTRACTS,
(D) OPERATE AND PAY OBLIGATIONS RELATED TO CUBS BUSINESS
IN THE ORDINARY COURSE SUBJECT TO FORMATION AGREEMENT AND
MAJOR LEAGUE BASEBALL RULES AND REGULATIONS, AND
(E) PLEDGE MEMBERSHIP INTEREST IN CHICAGO BASEBALL
HOLDINGS, LLC; (II) RECOGNIZING SUFFICIENCY OF NOTICE;
(III) WAIVING CERTAIN ACTIONS; AND (IV) GRANTING RELATED RELIEF**

This matter coming before the Court on (i) the motion (the "Tribune Transaction

Approval Motion")[3] filed by the debtors and debtors in possession in the first above-captioned

chapter 11 cases (collectively, the "Tribune Debtors"), which motion was filed on August 24,

2009 and (ii) the motion filed by Chicago National League Ball Club, LLC ("CNLBC"), which

motion was filed on October 12, 2009 (the "CNLBC Transaction Approval Motion" and,

collectively with the Tribune Transaction Approval Motion, the "Motions"), which Motions

collectively seek orders pursuant to 11 U.S.C. §§ 105(a), 363 and 365 (i) authorizing (a) Debtor

Tribune Company ("Tribune") and CNLBC to enter into and perform their obligations under that

certain Formation Agreement dated as of August 21, 2009 (the "Formation Agreement") and

authorizing each of the Tribune Debtors, where applicable, and CNLBC to enter into and

perform their obligations under those agreements ancillary to the Formation Agreement that

collectively effect the transactions described in the Motions (as described in more detail in the

Motions, the "Ancillary Agreements"),[4] (b) each of the Tribune Debtors and CNLBC to effect

the Proposed Business Combination (as defined in the Motions) and (c) each of the Tribune

Debtors and CNLBC to assume all Cubs Executory Contracts to which it is a party and assign

---

[3] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motions or the Formation Agreement, as applicable.

[4] For the avoidance of doubt, the term Ancillary Agreements, as used in this Order, includes, without limitation, (i) the Tribune Debt Guarantees, (ii) the WGN Agreements, (iii) the Superstation Extension, (iv) the Newco LLC Agreement, (v) the Tax Matters Agreement, (vi) the Transition Services Agreement, (vii) the Closing Escrow Agreement, and (viii) the Indemnity Escrow Agreement.

those Cubs Executory Contracts to Chicago Baseball Holdings, LLC, a Delaware limited liability company ("Newco") or one of its subsidiaries as an element of the Proposed Business Combination; (ii) authorizing Tribune to enter into certain guarantees of specific debt financing facilities (the "Tribune Guarantees") to be entered into by Newco in connection with the Proposed Business Combination; (iii) authorizing Debtor WGN Continental Broadcasting Company, one of the Tribune Debtors ("WGN") to enter into and perform its obligations under certain restated broadcast rights agreements concerning radio and television broadcasts of Chicago Cubs baseball games and Tribune to enter into and perform its obligations under the Superstation Extension; (iv) authorizing CNLBC to pledge its membership interest in Newco to secure obligations under certain debt financing to be entered into by Newco as part of the Proposed Business Combination; (v) authorizing CNLBC to grant releases of the Potential Avoidance Actions (as defined below) and (vi) granting related relief; and the Court having reviewed the Motions, a form of order granting the relief requested in the Tribune Transaction Approval Motion, and a separate form of order granting the relief requested in the CNLBC Transaction Approval Motion, and having entered into evidence and considered the exhibits, declarations and testimony provided in connection with the Motions, and having heard and considered the statements of counsel regarding the relief requested in the Motions at (y) a hearing before the Court to consider the relief requested in the Tribune Transaction Approval Motion, which hearing was held on September 24, 2009, and (z) a hearing before the Court to consider the relief requested in the CNLBC Transaction Approval Motion, which hearing was held on October 13, 2009 (collectively, the "Hearings"); and the Court having previously granted the relief requested in the Tribune Transaction Approval Motion and approved the Proposed Business Combination as described therein as to the Tribune Debtors by order dated as of

3

September 24, 2009 [D.I. 2213] (the "Tribune Transaction Approval Order"); and the Court

having determined that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§

157 and 1334, (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), (c) venue of this

matter in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409, and (d) notice of the

Motions, the Hearings, and the Proposed Business Combination has been provided on the terms

set forth in that certain Order (I) Approving Form and Scope of Notice of Proposed Business

Combination Involving Cubs Business to Creditors and Parties-in-Interest of Tribune Debtors

and Cubs Entities, (II) Approving Process for Effecting Proposed Business Combination and

Setting Transaction Hearing and Related Deadlines, and (III) Approving Certain Investor

Protections dated August 31, 2009 [D.I. 2053] (the "Notice and Procedures Approval Order"),

and in accordance with sections 102(1) and 363 of the Bankruptcy Code and Bankruptcy Rules

2002, 6004 and 6006 and the Local Rules of the Court, and no other or further notice of the

CNLBC Transaction Approval Motion or the relief sought thereby is required, and the notice

provided was in all ways good, proper, reasonable, timely, adequate and sufficient notice of the

Proposed Business Combination under the circumstances with respect to all creditors and parties-

in-interest in the Tribune Debtors' chapter 11 cases and CNLBC's chapter 11 case; and any

objections to the relief sought in the CNLBC Transaction Approval Motion having been

withdrawn or heard and overruled;

NOW, THEREFORE, THE COURT FINDS AND DETERMINES AS

FOLLOWS:

1.    A proper, reasonable and sufficient opportunity to object or to be heard

regarding the relief requested in the CNLBC Transaction Approval Motion has been afforded to

all interested persons and entities with respect to both the Tribune Debtors and CNLBC,

including, without limitation, (i) creditors of CNLBC, (ii) creditors of any of the Cubs Entities, (iii) holders of any interests in any assets of the Cubs Business that are sought to be transferred by CNLBC by operation of the Formation Agreement and/or the Ancillary Agreements to Newco (or, in the case of the Direct Cubs Contributed Assets, to Chicago Cubs National League Ball Club, LLC, a subsidiary of Newco (the "Cubs Newco Sub")), and (iv) counterparties to any Cubs Executory Contracts sought to be assumed by CNLBC and assigned to Newco or any of the Newco Subs.

2.      The entry into the Proposed Business Combination and Formation Agreement and any of the Ancillary Agreements by CNLBC, and the performance of its obligations thereunder, are reasonable and proper exercises of CNLBC's business judgment. Negotiation and preparation of the Formation Agreement and the Ancillary Agreements were conducted and concluded at arm's-length and in good faith by all parties.

3.      CNLBC (i) had and has full corporate power and authority to execute the Formation Agreement, the Ancillary Agreements and all other documents contemplated thereby and the Proposed Business Combination has been duly and validly authorized by all necessary corporate action; (ii) has all of the corporate power and authority necessary to consummate the Proposed Business Combination; (iii) has taken all corporate action necessary to authorize and approve the Proposed Business Combination and the consummation of the transactions contemplated thereby; and (iv) requires no consents or approvals, other than those expressly provided for in the Formation Agreement and the Ancillary Agreements, to consummate such transactions.

4.      The Bidder, Newco and the Newco Subs have at all times acted reasonably, properly and in good faith in connection with the process leading to and including

the transactions contemplated by the Formation Agreement, the Ancillary Agreements, the Notice and Procedures Approval Order, and under the CNLBC Transaction Approval Motion and this Order.

5.     The marketing of the Cubs Business as described in the Notice and Procedures Approval Motion [Tribune Docket No. 2000], the Motions and in the exhibits, declarations and testimony submitted to the Court in connection therewith and in support thereof was reasonable and appropriate.

6.     The notice and publicity of the Proposed Business Combination given in connection with or existing prior to the filing of the Motions and in accordance with the Notice and Procedures Approval Order was good and appropriate and accordingly provided sufficient notice to creditors and other interested parties with respect to both the Tribune Debtors and CNLBC of the Proposed Business Combination in these particular circumstances, and accordingly the relief requested in the Notice and Procedures Approval Motion is hereby granted with respect to CNLBC and made applicable thereto.

7.     Based on the record established at the Hearings, and taking into account all relevant factors, the Proposed Business Combination represents the best proposed transaction for the Cubs Business, and it is within the exercise of CNLBC's reasonable business judgment to enter into and perform its obligations under the Formation Agreement, the Ancillary Agreements, and all related transactions.

8.     The Tribune Debtors and CNLBC have demonstrated that there is a material risk that, absent entry of this Order and approval of the Proposed Business Combination on an immediate basis by this Court, the Proposed Business Combination on the terms set forth in the Formation Agreement and the Ancillary Agreements would fail to occur, causing

significant immediate and irreparable harm to the Tribune Debtors, CNLBC, and their estates and creditors.

9.     All necessary approvals for the Proposed Business Combination have been provided by Major League Baseball. The Official Committee of Unsecured Creditors and the Steering Committee of Tribune's prepetition lenders have stated their support for the Proposed Business Communication.

10.    CNLBC has demonstrated that the relief requested in the CNLBC Transaction Approval Motion is in the best interests of CNLBC, its estate, Affiliates, and its creditors as a whole.

THEREFORE, IT IS HEREBY ORDERED THAT:

1.     The CNLBC Transaction Approval Motion is granted as provided herein.

2.     All objections to the CNLBC Transaction Approval Motion not otherwise withdrawn prior to entry of this Order are overruled and denied.

3.     Where appropriate herein, findings of fact shall be deemed conclusions of law and conclusions of law shall be deemed findings of fact.

4.     Without limiting the approvals already afforded by the Tribune Transaction Approval Order, this Order shall be binding on CNLBC, its estate and Affiliates, and CNLBC's successors and assigns, including, but not limited to, any chapter 7 or chapter 11 trustee appointed in CNLBC's chapter 11 case, and the Formation Agreement and the Ancillary Agreements and the transactions and instruments and obligations of CNLBC contemplated thereby shall not be subject to rejection or avoidance by the Tribune Debtors and/or CNLBC and their estates and their respective successors and assigns, including, but not limited to, any chapter 7 or chapter 11 trustee appointed in the Tribune Debtors' and/or CNLBC's chapter 11 cases, or

any other person or entity and shall not be subject to subordination, estimation or disallowance (including under Section 502(e)(1)(B) of the Bankruptcy Code) and shall not be discharged or affected by any plan of reorganization confirmed in these proceedings.

5.     CNLBC is authorized to enter into and perform any and all obligations under the Formation Agreement and, to the extent CNLBC is a party thereto, each of the Ancillary Agreements (including, without limitation, the Newco LLC Agreement, Tax Matters Agreement, the Closing Escrow Agreement and the Indemnity Escrow Agreement).

6.     CNLBC is authorized to pledge any membership interest to be received by it in Newco as part of the Proposed Business Combination to the lenders providing the Senior Debt Financing to Newco as part of the security for the Senior Debt Financing and the Private Placement Notes, and CNLBC is further authorized to enter into and perform its obligations under any agreements or other documents reasonably necessary to give effect to that pledge.

7.     The Formation Agreement, the Ancillary Agreements, assumption by CNLBC and assignment to Newco (or, in the case of the Direct Cubs Contributed Assets, to Cubs Newco Sub) of those Cubs Executory Contracts to which CNLBC is a party and all other agreements entered into by CNLBC and Newco and the Newco Subs in connection with the Proposed Business Combination are valid and enforceable pursuant to their terms and applicable law.

8.     CNLBC is hereby authorized to effect the Proposed Business Combination and to contribute and transfer, and where applicable to cause any Affiliate to contribute and transfer, to Newco (or, in the case of the Direct Cubs Contributed Assets, to Cubs Newco Sub) any and all assets owned or held by CNLBC (or, if applicable, a relevant Affiliate) constituting part of the Cubs Business, and such contributions and transfers shall be, and are, binding upon all

parties in both the Tribune Debtors' and CNLBC's chapter 11 cases and enforceable in accordance with the terms of the Formation Agreement, the Ancillary Agreements, the Tribune Transaction Approval Order and this Order. CNLBC and each other person having duties or responsibilities under the Formation Agreement, the Ancillary Agreements, or this Order, and their respective directors, officers, agents, representatives, and attorneys, are authorized and empowered to (a) carry out all of the provisions of such agreements and this Order; (b) issue, execute, deliver, file and record, as appropriate, any of such agreements and any additional agreements relating thereto; (c) take any and all actions contemplated by such agreements or this Order; and (d) issue, execute, deliver, file and record, as appropriate, such other contracts, instruments, releases, deeds, assignments, or other agreements, and to perform such other acts as are consistent with, and necessary or appropriate to, implement, effectuate and consummate the Proposed Business Combination, the Formation Agreement, the Ancillary Agreements, and this Order, all without further application to, or order of, the Court or further action by their respective directors or equity holders, and with like effect as if such actions had been taken by unanimous action of the respective directors and equity holders of such entities. Without limiting the generality of the foregoing, this Order shall constitute all approvals and consents, if any, required by applicable business corporation, trust and other laws of applicable governmental units with respect to the implementation and consummation of the Proposed Business Combination, the Formation Agreement, the Ancillary Agreements, and this Order.

9.      Following the completion of the transactions contemplated in the Formation Agreement and the Ancillary Agreements (other than the Newco Sale), all right, title and interest in and to the assets of the Cubs Business transferred by CNLBC shall be immediately vested in Newco (or, in the case of the Direct Cubs Contributed Assets, in Cubs

Newco Sub) pursuant to sections 363(b) and (f) of the Bankruptcy Code, free and clear of any

and all liens (including, but not limited to, any and all "liens" as defined in section 101(37) of the

Bankruptcy Code), claims (including, without limitation, any and all "claims" as defined in

section 101(5) of the Bankruptcy Code), mortgages, deeds of trust, guarantees, security

agreements, security interests, pledges, options, easements, servitudes, rights-of-way,

encroachments, hypothecations, charges, obligations, rights, restrictions, interests (as such term

is used in section 363(f) of the Bankruptcy Code) and encumbrances in or with respect to any of

the assets of the Cubs Business transferred by CNLBC, whenever arising, whether imposed by

agreement, understanding, law, equity or otherwise; provided, however, that Permitted Liens and

other claims, rights, interests and encumbrances assumed by Newco (or, in the case of the Direct

Cubs Contributed Assets, by Cubs Newco Sub) pursuant to the Formation Agreement and/or any

of the Ancillary Agreements shall remain in and with such assets and shall be enforceable

against such assets.

        10.    Following the completion of the Newco Sale provided for in the

Formation Agreement, all right, title and interest in and to the assets of the Cubs Business that

were previously transferred by CNLBC to Newco and are contemplated thereafter to be sold by

Newco to its subsidiaries (the "Newco Subs") shall be immediately vested in the Newco Subs

pursuant to sections 363(b) and (f) of the Bankruptcy Code, free and clear of any and all liens

(including, but not limited to, any and all "liens" as defined in section 101(37) of the Bankruptcy

Code), claims (including, without limitation, any and all "claims" as defined in section 101(5) of

the Bankruptcy Code, which include the rights, claims, causes of action and choses in action

described in paragraphs 14 and 15 of this Order), mortgages, deeds of trust, guarantees, security

agreements, security interests, pledges, options, easements, servitudes, rights-of-way,

encroachments, hypothecations, charges, obligations, rights, restrictions, interests (as such term is used in section 363(f) of the Bankruptcy Code) and encumbrances in or with respect to any of the assets of the Cubs Business transferred by Newco to any of the Newco Subs, whenever arising, whether imposed by agreement, understanding, law, equity or otherwise; provided, however, that Permitted Liens and other claims, rights, interests and encumbrances assumed by Newco and thereafter assumed by the relevant Newco Sub(s) as contemplated by the Formation Agreement and/or any of the Ancillary Agreements shall remain in and with such assets and shall be enforceable against such assets; and provided further that, for the avoidance of doubt, the liens granted by Newco in connection with the Senior Debt Financing shall continue in full force and effect after the transfer of the assets of the Cubs Business sold by Newco to its subsidiaries.

11.     Without limiting any other provision of this Order, any and all entities that assert, or may assert, a lien, claim, encumbrance, right or other interest of any kind in any of the Cubs Contributed Assets contributed to Newco (and thereafter sold by Newco to any of the Newco Subs as part of the Newco Sale) (or, in the case of the Direct Cubs Contributed Assets, to Cubs Newco Sub) by CNLBC, or against CNLBC respecting such Cubs Contributed Assets, and that were provided with notice of the Proposed Business Combination as set forth in the Notice and Procedures Approval Order, and did not timely file an objection to the Proposed Business Combination as provided for in the Notice and Procedures Approval Order, are deemed to have consented to the Proposed Business Combination and to the transfer of such Cubs Contributed Assets free and clear of any such lien, claim, encumbrance, right or other interest.

12.     Except as provided under the Formation Agreement and/or any of the Ancillary Agreements (including, but not limited to, provision for Permitted Liens), (a) the

Bidder, Newco, Cubs Newco Sub, and the Newco Subs shall not be liable for any liens, claims, encumbrances, liabilities, or obligations of any kind against or of CNLBC or the assets of the Cubs Business contributed by CNLBC, and Newco, Cubs Newco Sub, and the Newco Subs shall have no successor or vicarious liabilities of any kind or character whether with respect to CNLBC or the assets of the Cubs Business contributed by CNLBC, known or unknown, now existing or hereafter arising, whether fixed or contingent, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly; (b) the Bidder, Newco, Cubs Newco Sub, and the Newco Subs shall not be deemed or found to be successors of or to CNLBC for any purpose, including, but not limited to any liens, claims, encumbrances, liabilities or obligations against or of CNLBC or the assets of the Cubs Business transferred by CNLBC, and the Bidder, Newco, Cubs Newco Sub and the Newco Subs shall have no liability, obligation or responsibility as successors to CNLBC (whether as a result of federal or state law or otherwise) as a result of the contribution, transfer or assignment of the assets of the Cubs Business transferred by CNLBC or the entry into and consummation of the Proposed Business Combination, and will be exempt from any bulk transfer laws in all applicable jurisdictions; and (c) in no event shall the Bidder, Newco, Cubs Newco Sub or the Newco Subs have any liability, obligation or responsibility for any liens, claims, encumbrances, liabilities or obligations that are Cubs Excluded Liabilities. No persons or entities (including, without limitation, creditors of CNLBC and parties-in-interest in CNLBC's chapter 11 case) shall have the right, or shall be permitted to, bring or otherwise pursue any claim or cause of action against any of the Bidder, Newco, Cubs Newco Sub and/or the Newco Subs on account of (i) any theory of successor or vicarious liability based on the Proposed Business Combination and the individual transactions comprising same, or (ii) any Cubs Excluded Liabilities.

13. This Order is and shall be effective as a determination that, upon the contribution of the assets of the Cubs Business by CNLBC to Newco (or, in the case of the Direct Cubs Contributed Assets, to Cubs Newco Sub), all liens, claims, encumbrances, rights, and other interests (except for Permitted Liens and other claims, rights, interests and encumbrances assumed by Newco (and, where applicable, by Cubs Newco Sub) pursuant to the Formation Agreement and/or any of the Ancillary Agreements) existing as to such assets have been and hereby are terminated and declared to be unconditionally released, discharged and terminated, and such determination shall be binding upon and govern the acts of all persons and entities, including all filing agents, filing officers, administrative agencies or units, governmental departments or units, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to such assets. Each of CNLBC, the Bidder, Newco, and Cubs Newco Sub (where applicable) are authorized to take such further steps and execute such further documents, assignments, instruments and papers as shall be reasonably requested by any of the other parties to implement and effectuate the transactions contemplated in the Formation Agreement, the Ancillary Agreements, and this Order. All liens, claims, encumbrances, rights, and other interests of record as of the date of this Order (except for Permitted Liens and other claims, rights, interests and encumbrances assumed by Newco pursuant to the Formation Agreement and/or any of the Ancillary Agreements) shall be forthwith removed and stricken as against the assets of the Cubs Business transferred by CNLBC to Newco (or, in the case of the Direct Cubs Contributed Assets, to Cubs Newco Sub). All persons and entities described in this paragraph are authorized and specifically directed to strike all such

recorded liens, claims, rights, interests and encumbrances (except for Permitted Liens and other claims, rights, interests and encumbrances assumed by Newco (or, in the case of liens, claims, rights, interests and encumbrances relating to the Direct Cubs Contributed Assets, by Cubs Newco Sub) pursuant to the Formation Agreement and/or any of the Ancillary Agreements) against the assets of the Cubs Business transferred by CNLBC to Newco (or, as applicable, to Cubs Newco Sub) from their records, official and otherwise.

14.     Notwithstanding any provisions of the Formation Agreement to the contrary, and without limiting any provisions of paragraph 12, supra, the "Cubs Excluded Assets" defined in Exhibit A to the Formation Agreement shall include in clause (c) of such definition the Excluded Contracts and all rights and claims thereunder, and all rights, claims, causes of action and choses in action, whenever arising, against any Person other than the Bidder Parties, Newco or the Newco Subs (i) arising out of, in connection with or otherwise relating in any manner to the series of transactions (or any thereof) pursuant to which Tribune became privately held, which transactions ultimately resulted in the transfer of ownership of Tribune to the Tribune Employee Stock Ownership Plan, and/or any financing incurred in connection therewith or related thereto (collectively, the "LBO Transactions"), including, without limitation, any claims seeking to avoid or invalidate any guarantees or other obligations incurred in connection therewith; or (ii) arising pursuant to Chapter 5 of the Bankruptcy Code with respect to all intercompany claims or obligations.

15.     Notwithstanding any provisions of the Formation Agreement to the contrary, and without limiting any provisions of paragraph 12, supra, the "Cubs Excluded Liabilities" defined on Exhibit A to the Formation Agreement shall include any obligation or liability arising out of, in connection with or otherwise relating in any manner to rights, claims,

causes of action and choses in action arising out of, in connection with or otherwise relating in any manner to (i) the LBO Transactions, including, without limitation, any claims seeking to avoid or invalidate any guarantees or other obligations incurred in connection therewith; or (ii) intercompany claims or obligations, including, without limitation, any claims arising under Chapter 5 of the Bankruptcy Code.

16.     Any and all liens, claims, encumbrances and interests in or against the assets of the Cubs Business terminated and declared to be unconditionally released, discharged and terminated by this Order will attach to the net consideration to be received by CNLBC with the same rights and priorities as such liens, claims, encumbrances and interests enjoyed against the assets of the Cubs Business.

17.     Subject to the provisions of this Order, if any person or entity that has filed statements or other documents or agreements evidencing liens, claims, rights, interests or encumbrances (except for Permitted Liens and other claims, rights, interests and encumbrances assumed by Newco (or, in the case of liens, claims, rights, interests and encumbrances relating to Direct Cubs Contributed Assets, by Cubs Newco Sub) pursuant to the Formation Agreement and/or the Ancillary Agreements) on any of the assets of the Cubs Business transferred by CNLBC does not deliver to the Tribune Debtors, the Cubs Entities, Newco and/or the Newco Subs, prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens (except for Permitted Liens) and easements, and any other documents necessary for the purpose of documenting the release of all liens, claims, rights, interests and encumbrances that the person or entity has or may assert with respect to any of the assets of the Cubs Business transferred by CNLBC (except for Permitted Liens and other claims, rights, interests and encumbrances assumed by Newco (or, in

the case of liens, claims, rights, interests and encumbrances relating to Direct Cubs Contributed Assets, by Cubs Newco Sub) pursuant to the Formation Agreement and the Ancillary Agreements), CNLBC, Newco, and Cubs Newco Sub are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of such persons or entity with respect to any of the assets of the Cubs Business contributed as part of the Proposed Business Combination by CNLBC to Newco (or, in the case of the Direct Cubs Contributed Assets, to Cubs Newco Sub), as may thereafter be sold by Newco to any of the Newco Subs as part of the Newco Sale.

18.     The Bidder, Newco and the Newco Subs have acted properly, reasonably and in good faith in connection with the Proposed Business Combination, the transactions contemplated by the Formation Agreement, the Ancillary Agreements, the Notice and Procedures Approval Motion and Order, the Motions, the Tribune Transaction Approval Order and this Order and, accordingly, pursuant to section 363(m) of the Bankruptcy Code, the validity of the Proposed Business Combination, the Formation Agreement, the Ancillary Agreements and the contribution of any and all assets of the Cubs Business by CNLBC to Newco (or, in the case of Direct Cubs Contributed Assets, to Cubs Newco Sub), as well as the Newco Sale, shall not be affected by the reversal or modification on appeal of the authorizations granted under this Order pursuant to section 363(b) of the Bankruptcy Code.

19.     The Proposed Business Combination, the Formation Agreement and the Ancillary Agreements have been negotiated, developed and proposed at arm's-length and in good faith and, as such, neither CNLBC nor any Trustee appointed in the Tribune Debtors' and/or CNLBC's chapter 11 cases, shall be entitled to avoid the Proposed Business Combination or any agreement or transaction included therein or related thereto pursuant to section 363(n) of

16

the Bankruptcy Code, nor shall CNLBC be entitled to costs, fees, expenses, or other damages under section 363(n) of the Bankruptcy Code. None of the Bidder, Newco, Cubs Newco Sub or any Newco Sub is an "insider" of CNLBC, as that term is defined in Bankruptcy Code section 101(31).

20.     The consideration provided and to be provided in connection with the Proposed Business Combination constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and under any other laws of the United States, any state, territory, possession or the District of Columbia.

21.     The membership interests in Newco to be received by the Cubs Entities under the Proposed Business Combination, as provided for in the Formation Agreement, shall be allocated to those entities with reference to the value of the Cubs Contributed Assets contributed by each of the Tribune Debtors and the Cubs Entities to Newco (or, in the case of the Direct Cubs Contributed Assets, to Cubs Newco Sub). Without affecting the allocation of the value of the Cubs Contributed Assets (as defined in the Formation Agreement) pursuant to Section 1.7 of the Formation Agreement, the Estimated Special Distribution Amount and the Final Special Distribution Amount shall be deposited with CNLBC, and such amounts shall be held by CNLBC in segregated accounts separate from the integrated cash management system maintained by Tribune for itself and its affiliates, pending the distribution of such amounts under (a) a confirmed and effective plan of reorganization for Tribune, CNLBC, and their affiliates, or (b) further order of the Bankruptcy Court. Pending such distribution, all issues (and the rights of all parties) with respect to the allocation of such amounts among the respective Tribune Debtors and Cubs Entities are fully reserved.

22.     CNLBC is and shall be authorized to make or receive any transfers subsequent to the Closing Date necessary to effect adjustments to the Estimated Special Distribution Amount in order to arrive at the Final Special Distribution Amount (as each term is defined in the Formation Agreement).

23.     CNLBC is hereby authorized, pursuant to section 365 of the Bankruptcy Code, to assume any Cubs Executory Contracts to which it is a party and assign such Cubs Executory Contracts to Newco (or, in the case of any Cubs Executory Contracts relating to the Direct Cubs Contributed Assets, to Cubs Newco Sub). Furthermore, as part of the Proposed Business Combination and the Newco Sale contemplated by the Formation Agreement and the Ancillary Agreements, Newco is authorized to assign further any Cubs Executory Contracts assigned to it to the applicable Newco Sub. On the Closing Date or as soon as practicable thereafter, Newco shall pay to the counterparties to the Cubs Executory Contracts any cure amounts in respect of such Cubs Executory Contracts as determined by the Bankruptcy Court in respect of any Cubs Executory Contract as to which an objection has been timely filed by the counterparty thereto, which payment shall be in full and final satisfaction of all obligations and as full compensation to the counterparty for any pecuniary loss under any such Cubs Executory Contract pursuant to section 365(b)(1) of the Bankruptcy Code; provided, however, that if there is a dispute concerning any proposed cure amount, payment shall be made to the counterparty only after resolution of such dispute by agreement of the parties or, in the absence of any such agreement, by the Bankruptcy Court.

24.     The Cubs Executory Contracts to which CNLBC is a party will be assumed by CNLBC and assigned to Newco (or, in the case of any Cubs Executory Contracts to which CNLBC is a party relating to the Direct Cubs Contributed Assets, to Cubs Newco Sub), as

may thereafter be assigned further by Newco to the applicable Newco Sub as part of the Newco Sale, and such Cubs Executory Contracts will remain valid and binding and in full force and effect in accordance with their terms for the benefit of Newco, Cubs Newco Sub or the applicable Newco Sub, notwithstanding any provision in such Cubs Executory Contracts (including those described in sections 365(b)(2) and (f)(1) and (3) of the Bankruptcy Code), that prohibits, restricts or conditions such assignment or transfer, including, without limitation, all preferential rights or rights of first refusal of any kind or nature whatsoever, pursuant to section 365(f) of the Bankruptcy Code.

25.     CNLBC is authorized and directed to take any and all actions reasonably necessary or appropriate to consummate the proposed assumption and assignment of all Cubs Executory Contracts as to which it is a party to Newco (or, in the case of any Cubs Executory Contracts relating to the Direct Cubs Contributed Assets, to Cubs Newco Sub), and the further assignment by Newco of any such Cubs Executory Contracts to the Newco Subs, as specified in the Formation Agreement and/or any of the Ancillary Agreements. Except for the obligation of Newco (or, where applicable, Cubs Newco Sub) to pay any cure amounts as set forth in the Formation Agreement and/or the Ancillary Agreements, Newco and Cubs Newco Sub shall have no obligation, responsibility or liability for any breaches or defaults under any Cubs Executory Contracts that occurred prior to the assumption and assignment of any such contract. Pursuant to section 365(k) of the Bankruptcy Code, CNLBC is relieved of any liability for any breach of any Cubs Executory Contracts to which CNLBC is a party that are assumed and assigned to Newco or Cubs Newco Sub where such breach occurs after the assumption and assignment of such contract to Newco or, where applicable, Cubs Newco Sub.

26. Upon consummation of the Proposed Business Combination, CNLBC will be deemed to have released any avoidance actions it may have under Chapter 5 of the Bankruptcy Code for (i) prepetition transfers made by CNLBC in connection with the Cubs Business and (ii) transfers to creditors of the Cubs Entities whose liabilities are assigned to Newco and any counterparties to executory contracts and unexpired leases of nonresidential real property that are assumed by CNLBC and assigned to Newco (or, in the case of any liabilities or executory contracts relating to the Direct Cubs Contributed Assets, to Cubs Newco Sub) (the "Potential Avoidance Actions") to the extent such transfers would have become obligations of Newco pursuant to the Formation Agreement and/or the Ancillary Agreements had they not already been made by CNLBC.

27. In light of, inter alia, the contribution of the Specified Amount by the Bidder to Newco and the obtaining of the Debt Financing (including the revolving credit facility component thereof) and the Equity Financing by Newco, together with the transfer of the Cubs Business to Newco and Cubs Newco Sub, and through the Newco Sale to the Newco Subs, the counterparties to any Cubs Executory Contracts which are being assumed by CNLBC and assigned to Newco (or, in the case of any Cubs Executory Contracts relating to the Direct Cubs Contributed Assets, to Cubs Newco Sub), as may be further assigned by Newco to any of the Newco Subs as a component of the Newco Sale, are hereby deemed and are adequately assured of future performance within the meaning of section 365(f)(2)(B) of the Bankruptcy Code.

28. The terms and provisions of this Order shall be binding in all respects upon CNLBC and its estate, creditors, parties-in-interest and all individuals or entities holding or claiming any interests in CNLBC including, without limitation, any person or entity purporting

to hold liens, claims or encumbrances, rights or other interests in or against the assets that are the subject of the Proposed Business Combination that are owned by CNLBC.

29. In no event shall the Senior Lender Agent nor any lender providing Senior Debt Financing to Newco be required to make any funds available to Newco or any other person or entity, unless and until all Closing Conditions set forth in the Senior Debt Commitment Letter or the Bank Credit Agreement, as applicable, are satisfied or waived in accordance with the terms of the Senior Debt Commitment Letter or the Bank Credit Agreement, as applicable.

30. Nothing in this Order is intended to or shall be deemed to modify the terms of the Formation Agreement and/or any of the Ancillary Agreements, except as expressly provided herein. Nothing contained in any chapter 11 plan confirmed in any of the Tribune Debtors' or CNLBC's bankruptcy cases or any order confirming any such plan or in any other order in these chapter 11 cases (including any order entered after any conversion of a chapter 11 case of any of the Tribune Debtors or CNLBC to a case under chapter 7 of the Bankruptcy Code) shall alter, conflict with, or derogate from, the provisions of the Formation Agreement, the Ancillary Agreements or this Order. To the extent specified in the Formation Agreement and the Ancillary Agreements, the obligations of CNLBC respecting the Proposed Business Combination shall be entitled to administrative expense priority pursuant to sections 503(b) and 507(a)(2) of the Bankruptcy Code.

31. The Formation Agreement and/or any of the Ancillary Agreements may be modified, amended, or supplemented by the parties thereto, in a writing signed by such parties, in accordance with the terms thereof without further order of the Court, provided that any such modification, amendment, or supplement is not material, and provided further that notice of any such modification with respect to any such documents to which any of CNLBC, Newco and/or

the Newco Subs is a party is provided to the U.S. Trustee, the Official Committee of Unsecured Creditors, and the Steering Committee of Tribune's prepetition lenders. Consummation of the Proposed Business Combination and the fulfillment by CNLBC of its obligations under the Formation Agreement and the Ancillary Agreements are not prohibited or limited by any prior order of this Court.

32.     Nothing in this Order (or, for the avoidance of doubt, the Tribune Transaction Approval Order) shall impair the ability of any of the Cubs Entities that do not commence chapter 11 cases to enter into and perform their obligations under or in connection with the Proposed Business Combination (including, without limitation, pledging any interests in Newco that may be held by any such Cubs Entities as security for obligations under the Debt Financing being provided to Newco in connection with the Proposed Business Combination), the Formation Agreement, and/or the Ancillary Agreements, and no further authorization by the Court is necessary for any of those Cubs Entities to enter into any agreements or perform any and all of their obligations relating to the Proposed Business Combination, the Formation Agreement, and/or the Ancillary Agreements. In its capacity as parent of certain of the Cubs Entities, CNLBC shall have all necessary authority to cause such Cubs Entities to enter into and perform their obligations under any agreements or other documents necessary to implement the Proposed Business Combination (including, without limitation, causing the Cubs Entities to pledge any interests in Newco that may be held by any such Cubs Entities as security for obligations under the Debt Financing being provided to Newco in connection with the Proposed Business Combination).

33.     Prior to the Closing (as defined in the Formation Agreement), CNLBC is authorized to pay any and all obligations of the Cubs Business (including, but not limited to,

obligations arising prior to the date of the filing of CNLBC's chapter 11 petition) and otherwise to operate the Cubs Business without further order of the Court, subject to (i) the limitations contained in the Formation Agreement and (ii) the rules and regulations of Major League Baseball.

34. In the event of any conflict or inconsistency between the terms of this Order and the terms of the Formation Agreement, any of the Ancillary Agreements, and/or any other agreements entered into in connection with implementation of the transactions described herein and in the Motions, the terms of this Order shall govern and be controlling.

35. The Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement and enforce the terms and provisions of this Order, the Formation Agreement, and the Ancillary Agreements, and any amendments thereto.

36. Nothing in this Order shall be construed to limit, condition, or otherwise reduce the effectiveness of the Tribune Transaction Approval Order. Nothing herein or in the Tribune Transaction Approval Order shall abrogate, modify or otherwise affect the applicable rules, regulations and agreements governing Major League Baseball, or their applicability to the Cubs franchise.

37. Nothing in this Order or the TV Agreement shall affect the obligations of the parties under, or require or permit any television announcer for the Cubs to enter into an employment contract that is inconsistent with, the terms of the collective bargaining agreement to which WGN and the American Federation of Television and Radio Artists are parties, including, but not limited to, any obligation that may exist under such collective bargaining agreement to contribute to benefit trust funds under such collective bargaining agreement.

38.     The provisions of Bankruptcy Rule 6003 are satisfied and authority for

CNLBC to contribute the assets owned by it comprising part of the Cubs Business as part of the

Proposed Business Combination, assume and assign all Cubs Executory Contracts to which it is

a counterparty to Newco and/or the Newco Subs, as applicable, and pay any and all prepetition

obligations of the Cubs Business, are approved in accordance with such Rule.

39.     This Order shall be effective immediately upon entry pursuant to Rule

7062 and 9014 of the Federal Rules of Bankruptcy Procedure. The 10-day stays set forth in

Bankruptcy Rules 6004(g) and 6006(d) are hereby waived to permit the transactions described

herein to be closed prior to the expiration of such 10-day period.

Dated:  October 13, 2009
        Wilmington, Delaware

_____
        The Honorable Kevin J. Carey
        Chief United States Bankruptcy Judge